# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| COURTNEY GREEN, <br><br> Plaintiff, <br> v. <br><br> R.N. SHAW, R.N. AUGUSTE, <br><br> Defendants. | 3:17-cv-00913 (CSH) <br><br><br> **AUGUST 17, 2017** |

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

Plaintiff, Courtney Green, currently incarcerated at Osborn Correctional Institution ("Osborn"), and who was previously incarcerated at Corrigan Correctional Center ("Corrigan") in Connecticut, filed this Complaint *pro se* pursuant to 42 U.S.C. § 1983.[1] He has named as Defendants two Registered Nurses ("R.N.s") at Corrigan, identifying them by last name only as Shaw and Auguste. Each Defendant is sued only in his or her individual capacity. Plaintiff contends that Defendants have been deliberately indifferent to his medical needs and caused him significant physical harm.

## I.   STANDARD OF REVIEW

Under section 1915A of title 28 of the United States Code, the Court must review all prisoner civil complaints against governmental actors, and dismiss any portion of the complaint that "is

---

[1] Green initially filed a Complaint on June 2, 2017 and then filed an Amended Complaint on July 10, 2017 prior to this Court's review of his original Complaint. The Court will accept the Amended Complaint as the operative Complaint for review. He has added a § 1983 claim under the Equal Protection Clause in his Amended Complaint.

frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1),(2). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. *Id.*

## II.    FACTUAL ALLEGATIONS

The factual allegations contained in Green's Amended Complaint and in the medical requests attached to his Amended Complaint are recounted herein, recited in the light most favorable to Green. *See* Doc. 6. On or about June 23, 2015, Green began experiencing pain and bleeding from his rectum after a bowel movement, which occurred after he had been playing basketball and when he was fasting for Ramadan. *Id.* ¶ 1. The next day, on June 24, 2015, he wrote to the medical unit of Corrigan stating that he was "having pain in [his] rectum during bowel movement." *Id.* ¶ 2. His request was returned on or about June 26, 2015 with a notation that he had been placed on the sick call list. *Id.* About a week later on July 1, 2015, he wrote the medical unit after experiencing severe

2

discomfort and because he still had not been seen by a medical professional. *Id.* ¶ 3. He stated: "I have a serious problem. Pain and bleeding from the rectum and I need to see the Dr. urgently." *Id.* He also reminded them that he had sent a previous written request to them. *Id.* On July 3, 2015, he was called to sick call for triage where Defendant Shaw saw him. *Id.* ¶ 4. He explained what was happening to him and informed Shaw that he was fasting for Ramadan and had not consumed any food or liquid on June 23, 2015 the day of the first incident. *Id.* Shaw informed Plaintiff that he had to up his water and fiber intake, and suggested that he not strain while using the restroom. *Id.* ¶ 5. Shaw diagnosed him with hemorrhoids even though his rectum was never examined. *Id.* Shaw instructed Plaintiff to purchase hemorrhoid cream off commissary and explained that there was nothing that could be done for hemorrhoids. *Id.*

On August 20, 2015, Green again wrote to medical stating "I'm having hemorrhoid trouble problems." Doc. 6 ¶ 6. Soon after he was called to medical for triage where Defendant Auguste consulted him. *Id.* During this consultation, Green informed Auguste that he had been using hemorrhoid cream but it was not effective and his rectum was still bleeding. *Id.* ¶ 7. Auguste explained that hemorrhoids are chronic and life-long. *Id.* Auguste instructed Green to push the hemorrhoids back into his rectum with his fingers while in the shower. *Id.* Green requested that Auguste put him on a list to see the doctor so that they could being a process to remove the hemorrhoids. *Id.* Auguste told Green that there was no removal of hemorrhoids and Green stated "Oh ok. I'm all set." *Id.* Auguste did not place Green on the doctors wait list and did not examine Green's rectum, and thus, did not know the true extent of Green's medical condition. *Id.* ¶ 8.

On or about March 31, 2016, Green was transferred from Corrigan to Macdougall Walker Correctional Institution. Doc. 6 ¶ 9. While housed there, his symptoms worsened and eventually

impeded his ability to have regular bowel movements so much so that his underwear would be soiled with blood. *Id.* At that point, he also experience burning sensations from his rectum and he was in extreme discomfort while walking, running and during bowel movements. *Id.* In mid to late August 2016, Green wrote to medical via an inmate request. *Id.* ¶ 10. He was not seen and two weeks later, on September 12, 2016, he wrote again elaborating on the difficulties he was experiencing and explaining that he had not been seen for sick call treatment as required under Administrative Directives 8.1(6)A, 8.1(3)A. *Id.* On or about October 4, 2016, he received a notification that he was scheduled to see a doctor three days later. *Id.* ¶ 11. The notification was signed by A. Walter. *Id.* Green was not seen three days later, but was subsequently transferred to Osborn on October 21, 2016. *Id.*

Once transferred, on October 23, 2016, Green wrote to medical via an inmate request, requesting that the removal of veins because the hemorrhoids were causing a great deal of burning, bleeding and restriction of his bowel movements. Doc. 6 ¶ 12. On October 31, 2016, he was returned his inmate request, and on November 7, 2016, he filed an administrative health services review. *Id.* ¶ 13.[2] On December 1, 2016, he was called to medical where Dr. Wright saw him. *Id.* ¶ 14. During his consultation, Green explained in detail the symptoms that he had been experienced over about 18 months. *Id.* Dr. Wright then examined Green's rectum and did not find any hemorrhoids but did observe blood. *Id.* Dr. Wright prescribed to Green a stool softener, suppositories and cortisone cream. *Id.* Dr. Wright also submitted Green to a review committee to be determined if he should be tested for colon cancer. *Id.*

---

[2] His returned request stated that he was a no show, and in his administrative health services review he explained that he was a no show because he did not want to see a nurse again at sick call and required the attention of a medical doctor.

On or about December 9, 2016, Green's health services review was returned with the disposition "Change DX/TX" and he exhausted his administrative health services review. Doc. 6 ¶ 15. Between December 1, 2016 and February 6, 2017, Green was approved by the review committee to have testing done with Dr. Giles at the UCONN Health Center on February 7, 2017. *Id.* ¶ 16. During the consultation it was determined that he did not have colon rectal cancer, but that Green, in addition to suffering from moderate size hemorrhoids had anal tissue which had healed with gradation tissue and would not actually heal without a resection procedure and would continue to bleed until then. *Id.* On or about March 15, 2017, Green was transferred to UCONN Health Center for the resection procedure. *Id.* ¶ 17. He also had his internal hemorrhoid ban ligated. *Id.* Sometime in the middle of May, Green again began experiencing sharp pain from his rectum in addition to bleeding. *Id.*

Green alleges that Defendants Shaw and Auguste acted with deliberate indifference to his safety and violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide reasonable medical care in response to a serious medical need. Doc. 6 ¶ 20. Green also asserts that Defendants violated his due process rights by not allowing him to be seen by a doctor and denying him the proper medical treatment, thus, causing him significant pain and suffering over about 21 months. *Id.* ¶ 23. Finally, Green alleges that he was denied "Equal Treatment" by Defendants because they interfered with his medical care and were not qualified to diagnose him. *Id.* ¶ 25. He asserts that he should have been provided access to a specialist. *Id.* Green seeks a declaration that the acts and omissions described violate the Constitution, compensatory and punitive damages, attorney fees, and costs. *Id.* at 6.

## III. DISCUSSION

The Court will assess each of Green's three claims to determine whether any claim "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or a claim that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1),(2). The Court will address each claim in turn.

### A. Eighth Amendment Claim

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and internal quotation marks omitted). Such a claim contains two requirements. *Id.* "The first requirement is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). This requires determining "whether the prisoner actually was deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 279. "[P]rison officials who act reasonably cannot be found liable" for a deliberate indifference claim. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). The Second Circuit has presented a "non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless

in their denial of medical care." *Spavone*, 719 F.3d at 138 (citing *Salahuddin*, 467 F.3d at 280). The charged official must have acted or failed to act while actually aware of a substantial risk that serious harm would result to the inmate. *Id.* (citing *Salahuddin*, 467 F.3d at 280). It is not required that official intend harm; rather, officials must only be aware of the risk of harm. *Id.* (citing *Salahuddin*, 467 F.3d at 280). Any awareness may be shown "from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842) (internal quotation marks omitted). Neither negligence constituting medical malpractice nor a difference of opinion as to the appropriate response and treatment are sufficient to support a deliberate indifference claim. *See Salahuddin*, 467 F.3d at 279-80; *Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010).

Green has alleged that he suffered from significant and excruciating pain and bleeding from his rectum. The pain interfered with his daily activities, causing difficulty while walking and running and affecting his bowel movements. Once he was actually seen by a doctor, the doctor, and then a health committee reviewing the case, recommended that he be examined for colon cancer. Ultimately a medical procedure was required to relieve Green's pain and stop the bleeding. Assuming the truth of these allegations as the Court is required to do during this initial review, Green has clearly alleged sufficient facts to support an inference that he suffered from a serious medical need.

Each Defendant saw Green and failed to actually examine him or even to recommend that a doctor see him. Defendant Shaw diagnosed Green as suffering from hemorrhoids, instructing him to increase his water and fiber intake, not to strain while relieving himself, and to purchase hemorrhoid cream from the commissary. Defendant Shaw told Green that nothing else could be done. Defendant Auguste informed Green that hemorrhoids are chronic and last an entire life, and

echoed Defendant Shaw stating that they cannot be removed. Neither Defendant recommended that a doctor see Green and neither ever examined his rectum. Such conduct, as alleged, supports a claim that Defendants were deliberately indifferent to a serious risk to Green's health and failed to act accordingly.

In summary, Green has stated an Eighth Amendment claim against each of the Defendants based on their deliberate indifference to his medical needs.

### B. Due Process Claim

Green asserts that Defendants violated his due process rights by not allowing him to see a doctor and denying him adequate medical care for 21 months. Green appears to be asserting a substantive due process claim based on the same facts that support his Eighth Amendment claim. At the very least, he does not allege any additional facts, and the Court, even liberally construing his Complaint is aware of none. Where "Eighth Amendment and Fourteenth Amendment due process protections overlap, the due process claim will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protection to prisoners." *Felix-Torres v. Graham*, 521 F. Supp. 2d 157, 164 (N.D.N.Y. 2007) (collecting cases). Because Green relies on the same facts to support both his Eighth Amendment and Fourteenth Amendment due process claims, his due process claim must be dismissed. *See id.* The allegations made against Defendants will be considered in the context of the Eighth Amendment claim.

### C. Equal Protection Claim

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated

8

differently than others similarly situated as a result of intentional or purposeful discrimination." *Shariff v. Coombe*, 655 F. Supp. 2d 274, 302 (S.D.N.Y. 2009) (quoting *Phillips v. Girdich*, 408 F.3d 124, 219 (2d Cir. 2005)) (internal quotation marks omitted). "A plaintiff also must demonstrate that any disparity in treatment cannot withstand the appropriate level of scrutiny." *Id.* Additionally, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). "The standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are 'prima facie' identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)), *overruled on other grounds by Appel v. Spiridan*, 531 F.3d 138, 139-40 (2d Cir. 2008).

Here, Green does not appear to allege that differential treatment has been imposed upon him; instead, he is alleging that he was denied reasonable medical treatment. He fails to point to anyone similarly situated who received different treatment, and does not allege that others in his situation displaying similar symptoms received different treatment. *See Medina v. Skowron*, 806 F. Supp. 2d 647, 652-53 (W.D.N.Y. 2011) (dismissing an equal protection claim where a plaintiff had not identified any similarly situated inmates treated differently from him); *see also Darvie v. Countryman*, No. 9:08-CV-0715, 2010 WL 3724122, at *4 (N.D.N.Y. April 26, 2010) (dismissing an equal protection claim where a plaintiff had not "alleged facts plausibly suggesting or produced evidence raising a triable issue of fact that Defendants' decision to transfer him was arbitrary, motivated by animus, or motivated by impermissible considerations."), *adopted by* 2010 WL

3724020 (N.D.N.Y. Sept. 15, 2010). Because Green has failed to identify any similarly situated individuals who were treated differently from him, let alone any with an "extremely high" level of similarity between them, Green's equal protection claim must be dismissed. *See Medina*, 806 F. Supp. 2d at 652-53.

## IV. CONCLUSION

Following this Court's review of Plaintiff's Amended Complaint, and for the reasons stated, the Court makes this Order:

1. Plaintiff's Amended Complaint is **DISMISSED** to the extent it seeks to plead (a) any § 1983 claims based on violations of his due process rights; and (b) any § 1983 claims based on the Equal Protection Clause. Those dismissals are made pursuant to 28 U.S.C. § 1915A(b).

2. Plaintiff's § 1983 claims based on a violation of the Eighth Amendment **WILL PROCEED** against each named Defendant in their individual capacities.

For the proper governance of the case, the Court also makes these additional Orders:

4. The Clerk shall verify the current work address of Defendants Shaw and Auguste with the Department of Correction Office of Legal Affairs and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order. The Clerk shall report to the Court the status of that waiver request on the **thirty-fifth (35th) day** after mailing. If any Defendant fails to return the waiver request, then the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

5. The Clerk shall send a copy of this Order to Plaintiff. The Clerk shall also send a

courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

6. Defendants shall file their response to the Amended Complaint, either an answer or a motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, then they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure.

7. Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the Court.

8. All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

9. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

10. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the Defendant or the attorney for the Defendant of his new address.

11. Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut
August 17, 2017**

*/s/ Charles S. Haight, Jr.*
**CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE**