# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| COURTNEY GREEN,<br><br>　　　　　Plaintiff,<br>　v.<br><br>R.N. SHAW, R.N. AUGUSTE,<br><br>　　　　　Defendants. | 3:17-cv-00913 (CSH)<br><br><br>**MARCH 29, 2019** |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Haight, Senior District Judge:**

Plaintiff Courtney Green ("Plaintiff"), currently incarcerated at Osborn Correctional Institution and previously incarcerated at Corrigan Correctional Center ("Corrigan"), filed this Complaint *pro se* pursuant to 42 U.S.C. § 1983 on June 2, 2017. On August 17, 2017, this Court issued an Initial Review Order, permitting Plaintiff's claims that he was denied adequate medical care in violation of the Eighth Amendment to proceed against two Registered Nurses at Corrigan, Nurses Shaw and Brennan[1] (the "Defendants"), in their individual capacities. That Order, 2017 WL 3568666 (D. Conn. Aug. 17, 2017), familiarity with which is assumed, also dismissed Plaintiff's Amended Complaint to the extent it sought to plead § 1983 claims for violations of his due process rights or based on the Equal Protection Clause. *Id.*

## I.　Standard of Review

A motion for summary judgment may be granted only where there is no genuine dispute

---

[1] In 2015, Nurse Brennan's last name was Augusto. Doc. 24-2 at 1 n.1. She was incorrectly named in the Complaint as Nurse Auguste. The Court will use the Defendant's current name in this ruling.

as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Id.*

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  If the initial burden is satisfied, the burden then shifts to the non-moving party to present "specific evidence demonstrating the existence of a genuine dispute of material fact."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (internal quotation marks and citation omitted).  While the Court must view the record in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *Anderson*, 477 U.S. at 255, the non-moving party nevertheless "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Instead, the non-movant must support any assertion disputing the veracity of a fact or existence of an alleged dispute with specific citation to the record materials.  Fed. R. Civ. P. 56(c)(1).

Because Plaintiff is proceeding pro se, the Court must read his submissions "liberally" and interpret them "to raise the strongest arguments" that they suggest.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  Nonetheless, "[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment."  *Rodriguez v. Hahn*,

209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks omitted).

## II.    <u>Facts</u>[2]

On or about June 23, 2015, Green began experiencing pain and bleeding from his rectum after a bowel movement, which occurred after he had been playing basketball and while he was fasting for Ramadan.  Plaintiff's Local Rule 56(a)(2) Statement, Doc. 29, at 18 ¶ 5.  The next day, he wrote to the medical unit of Corrigan stating that he was "having pain in [his] rectum during bowel movement."  *Id.* ¶ 6.  His request was returned on or about June 26, 2015 with a notation that he had been placed on the sick call list.  *Id.*   About a week later on July 1, 2015, he wrote the medical unit after experiencing severe discomfort and because he still had not been seen by a medical professional.  *Id.* ¶ 7.   He stated: "I have a serious problem. Pain and bleeding from the rectum and I need to see the Dr. urgently."  *Id.*  He also reminded medical staff that he had sent a previous written request regarding his symptoms.  *Id.*

On July 3, 2015, Green was seen by Defendant Shaw at sick call.  *Id.* ¶ 8.  He explained his symptoms and informed Shaw that he was fasting for Ramadan.  *Id.*  Shaw questioned the Plaintiff about his bowel movements, and Plaintiff indicated that earlier in the day he had a hard bowel movement.  Defendants' Local Rule 56(a)(1) Statement, Doc. 24-3 ¶ 22.  Plaintiff did not disclose black tarry stools, which would have indicated blood in the stool.  *Id.* ¶ 25.  Shaw also auscultated to determine if Plaintiff's bowels were stagnant and for regular peristalsis, felt the plaintiff's abdominal area for distention caused by stool buildup, and took Plaintiff's vital signs.  Doc. 29 at 18-19; Doc. 24-3 ¶ 23.  Shaw did not, however, conduct a rectal examination.  Doc. 29

---

[2] The facts are taken from the parties' Local Rule 56(a) Statements and attached exhibits.  These facts are not disputed for purposes of this motion or are taken in the light most favorable to Plaintiff.  *See Mitchell v. City of New York*, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

at 18-19. Shaw diagnosed Plaintiff with hemorrhoids due to constipation, and recommended that Plaintiff increase his intake of water, consume more fiber, and not strain while using the restroom. Doc. 24-3 ¶¶ 16, 31, 33, 34. Green was also instructed to follow up in three to four days if the problem persisted. *Id.* ¶ 16. Green did not return within three to four days, and Shaw did not see Green again.

On August 20, 2015, Green again wrote to the Corrigan medical unit stating "I'm having hemorrhoid trouble problems." Doc. 29 at 38, Pl.'s Ex. 5. Soon after he was called to medical for triage where Defendant Brennan met with him at sick call.[3] Doc. 24-3 ¶ 2. During this consultation, Green informed Brennan that he had been using hemorrhoid cream but it was not effective and his rectum was still bleeding. Id. ¶ 7. Brennan explained that hemorrhoids are chronic. *Id.* Brennan instructed Green to push the hemorrhoids back into his rectum with his fingers while in the shower. *Id.* Green requested that Brennan put him on a list to see the doctor so that they could begin a process to remove the hemorrhoids. *Id.* Brennan told Green that there was no removal of hemorrhoids and Green stated "Oh ok. I'm all set." Doc. 24-3 ¶ 47. Brennan did not place Green on the wait list to see a doctor and did not examine Green's rectum. *Id.* ¶¶ 50. Plaintiff does not allege that he interacted with either Defendant after August of 2015.

On or about March 31, 2016, Green was transferred from Corrigan to Macdougall Walker Correctional Institution. Doc. 29 at 20 ¶ 27. While housed there, his symptoms worsened and

---

[3] Green denied this statement. The record of Green's meeting with Defendant Brennan is undated. Doc. 25, Pl.'s Ex. A at 41-42. There is no notation in the medical records providing the date of this visit. However, Green submitted a sick call request on August 20, 2015, and was informed the following day that he was on the sick call list. *See* Doc. 29 at 38, Pl.'s Ex. 5. Green alleges that he was seen by Defendant Brennan a few days after his sick call request, and Defendant Brennan states in her affidavit that she saw Green in late August 2015. Doc. 24-5, Ex. C, Brennan Aff. ¶ 7. Absent any contrary evidence, the Court concludes that Defendant Brennan saw Green in late August 2015.

eventually impeded his ability to have regular bowel movements, to the point that his underwear would be soiled with blood.  *Id.*  At that point, he also experienced burning sensations from his rectum and he was in extreme discomfort while walking, running and during bowel movements. *Id.*  In mid- to late-August 2016, Green wrote to the medical unit via an inmate request form regarding his symptoms.  *Id.* at 21 ¶ 28.  He was not seen and two weeks later, on September 12, 2016, he wrote again elaborating on the difficulties he was experiencing and explaining that he had not been seen for sick call treatment as required under Administrative Directives 8.1(6)A and 8.1(3)A.  *See id.* at 40, Pl.'s Ex. 6.  On or about October 4, 2016, Green received a notification that he was scheduled to see a doctor five days later. *Id.* ¶ 29.  Green was not seen by a doctor while at MacDougall Walker, but was subsequently transferred to Osborn on October 21, 2016.  *Id.* ¶ 30. Two days after his transfer, Green wrote to medical via an inmate request form, stating that his hemorrhoids were "causing a great deal of burning, bleeding and restrict[ion] of my bowel movements" and requesting to have his veins removed.  *Id.* ¶ 31; *id.* at 42, Pl.'s Ex. 7.  On October 31, 2016, his inmate request was returned stating that he had been a no show at sick call.  *Id.* ¶ 32; *id.* at 42, Pl.'s Ex. 7.  On November 7, 2016, he filed an Inmate Administrative Remedy Form requesting a Health Services Review, and stating that he had not attended sick call because he had previously met with two nurses at Corrigan who had told them there was nothing that could be done about his condition.  *Id.* at 45-46, Pl.'s Ex. 8.  On December 1, 2016, Green was called to medical where Dr. Wright saw him.  *Id.*  ¶ 33.  During his consultation, Green explained in detail the symptoms that he had been experienced over about 18 months.  *Id.*  at 21-22 ¶ 33.  Dr. Wright then examined Green's rectum and did not find any hemorrhoids but did observe blood.  *Id.* at 22 ¶ 34.  Dr. Wright prescribed to Green a stool softener, suppositories and cortisone cream.  *Id.*  Dr.

Wright also submitted Green to a review committee to be determined if he should be tested for colon cancer. *Id.* ¶ 36.

On or about December 9, 2016, Green's Inmate Administrative Remedy Form requesting his Health Services Review was returned with the disposition "Change DX/TX." Doc. 29 at 45-46, Pl.'s Ex. 8. Between December 1, 2016 and February 6, 2017, Green was approved by the review committee to have testing done with Dr. Giles at the UCONN Health Center on February 7, 2017. *Id.* at 22 ¶ 36. During the consultation it was determined that Green did not have colon cancer, but that he, in addition to suffering from moderate size hemorrhoids, had an anal fissure which had healed with gradation tissue, and would not properly heal and would continue bleeding without a resection procedure. *Id.* ¶ 37. On or about March 15, 2017, Green was transferred to UCONN Health Center for the resection procedure. *Id.* ¶ 38. He also had the wall of an internal hemorrhoid band ligated. *Id.* Sometime in the middle of May 2017, Green again began experiencing sharp pain from his rectum in addition to bleeding. *Id.* ¶ 39. Green met with a series of medical providers since May 2017, but as of July 2018 he continues to suffer from pain and bleeding from his rectum. *Id.* at 26 ¶ 60.

## III.   Discussion

The defendants move for summary judgment on three grounds: (1) Green did not exhaust his administrative remedies before filing this action, (2) the Defendants were not deliberately indifferent to a serious medical need, and (3) the Defendants are protected by qualified immunity.

### A.   Exhaustion of Administrative Remedies

Defendants first argue that Green has not exhausted his administrative remedies. The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a

federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Special circumstances will not relieve an inmate of his obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

1.     Administrative Review Procedure[4]

The Health Services Review procedure is the administrative remedy for all medical issues. Department of Correction Administrative Directive 8.9(1), https://portal.ct.gov/DOC/AD/AD-Chapter-8 (last visited Dec. 11, 2018). An inmate, like Green, seeking review of a diagnosis- or

---

[4] The following facts are also undisputed unless otherwise noted, and are taken from the parties' Local Rule 56(a) Statements and attached exhibits.

treatment-related issue (including the decision to provide no treatment) is directed to seek an informal resolution prior to filing a formal request for a Health Services Review. *Id.* at 8.9(10). If the issue is not satisfactorily resolved informally, the inmate is then directed to file an Inmate Administrative Remedy Form seeking a Health Services Review. *Id.* at 8.9(11). The Inmate Administrative Remedy Form must designate that the inmate is experiencing an issue related to "Diagnosis/Treatment" by checking the appropriate box, and provide a concise statement of what diagnostic or treatment decision he believes is wrong and how he has been affected. *Id.* The Health Services Review Coordinator will then schedule a Health Services Review Appointment with a doctor as soon as possible and at no cost to the inmate. *Id.* The doctor must denote the visit in the inmate's medical record as a Health Services Review Administrative Remedy Appointment. *Id.* at 8.9(11)(C).

If the doctor concludes that existing diagnosis or treatment was appropriate, the inmate is considered to have exhausted his administrative remedies. *Id.* at 8.9(11)(A). If the doctor decides that a different treatment or diagnosis is warranted, he may either act on his decision or refer the matter to the Utilization Review Committee for authorization. *Id.* at 8.9(11)(B). The doctor will notify the inmate of this decision in writing within ten business days. *Id.* at 8.9(11)(A).

2.     <u>Green's Administrative Exhaustion</u>

After attending sick call twice at Corrigan and submitting multiple medical grievances and Inmate Request Form, Green filled out an Inmate Administrative Remedy Form on November 7, 2016. *See* Doc. 29 at 45-46, Pl.'s Ex. 8. In his Inmate Administrative Remedy Form, he requested "a Dr. appointment" to "discuss the removal of these hemorrhoids." *Id.* He also stated that he did not want to see a nurse at sick call at Osborn Correctional Institution because he had already seen

two nurses at sick call at Corrigan and was incorrectly told nothing could be done. *Id.* The form was received on November 21, 2016. *Id.*

According to DOC procedure, Green was then entitled to a Health Services Review Appointment, which should have been denoted as such in Green's health record. *See* Doc. 24-3, Pl.'s Ex. D at 2. There is no entry in Green's medical records for a Health Services Review Appointment. However, medical records indicate that a Dr. Wright examined Green on December 5, 2016, and wrote treatment notes in response to Green's Inmate Administrative Request Form the same day. The same day, Dr. Wright also recorded treatment notes in response to Green's Inmate Administrative Request Form. *See* Pl.'s Ex. 8, Doc. 29 at 45. A disposition of "Change DX/TX" was issued in response to Green's Inmate Administrative Remedy Form on December 9, 2016, which included Dr. Wright's treatment notes. *Id.* When the response was returned, a box indicating that Green had "exhausted DOC's administrative remedies" had also been checked. *Id.*

These facts indicate that Green followed the exact procedure required by DOC Administrative Directive 8.9: he sought informal resolution of his grievance by submitting an Inmate Request Form, filled out an Inmate Administrative Remedy Form when his concerns were not resolved to his satisfaction, and met with a doctor for a Health Services Review Appointment. The official response to his Inmate Administrative Remedy Form also specifically represented that he had "exhausted DOC's Administrative Remedies." *See Braham v. Perelmuter*, No. 3:15-CV-1094 (JCH), 2017 WL 3222532, at *10 (D. Conn. July 28, 2017) ("[B]ased on the fact that the Health Services Review Coordinator checked off the box indicating that [plaintiff] had exhausted his available remedies, there is an issue of fact as to whether [plaintiff] was justified in believing that he had taken all the necessary steps to exhaust his remedies as to his claim against Health

Administrator Brown."). Although the form did not identify Defendants Shaw and Brennan by name, Green's specific reference to attending "sick call twice already in Corrigan" where nurses told him there was "nothing that can be done for [his] medical condition" clearly implicates their inaction as the underlying reason for his grievance—Defendants were the only medical staff who treated Green for hemorrhoids at Corrigan.

Defendants' suggestion that Plaintiff's meeting with Dr. Wright was not a "Health Services Review Appointment" because it was not recorded as such in Plaintiff's medical records is also unavailing. The facts before the Court evince a far greater likelihood that a Health Services Review Appointment was not recorded due to administrative error than non-occurrence.[5] Accordingly, the motion for summary judgment is denied on this ground that Green failed to exhaust his administrative remedies.

B.      Deliberate Indifference to a Serious Medical Need

Defendants next argue that they were not deliberately indifferent to a serious medical need. While the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), "not every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when two requirements–one objective and one subjective–are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer*, 511 U.S. at 834).

---

[5] The facts before the Court strongly suggest that Green's appointment with Dr. Wright was a Health Services Review Appointment in direct response to the Inmate Administrative Remedy Form he submitted. Specifically, Green's medical records indicate that he was seen by Dr. Wright on December 5, 2016. On the same date, Dr. Wright signed and wrote treatment notes on the official response to Green's Inmate Administrative Remedy Form. The appointment also took place between receipt of the Inmate Administrative Remedy Form and disposition, and addressed the same underlying medical issue as Green's Inmate Administrative Remedy Form.

Objectively, "the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks omitted). A condition is considered serious if "a reasonable doctor or patient would find [it] important and worthy of comment," the condition "significantly affects an individual's daily activities," or if it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted).

Subjectively, the defendant must have had actual awareness of a substantial risk that the inmate would suffer serious harm as a result of her conduct. *See Salahuddin*, 467 F.3d at 279-80. Put differently, the prisoner must show that the defendant knew of and disregarded "'an excessive risk to inmate health or safety; the official must [have] both be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... must also [have] draw[n] the inference.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Farmer*, 511 U.S. at 837); *see also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam) (equating "deliberate indifference" with criminal "recklessness"). Merely negligent conduct does not constitute deliberate indifference, *Salahuddin*, 467 F.3d at 280, nor does a disagreement over proper treatment or diagnosis create a constitutional claim so long as the treatment was adequate. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Chance*, 143 F.3d at 703; *see also Hathaway v. Coughlin*, 37 F.3d 63, 70 (2d Cir. 1994) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors.").

1. Serious Medical Need

To satisfy the objective element, Green must present evidence that his medical need was

serious at the time he was treated by the Defendants. *See El-Hanafi v. United States*, No. 1:13-cv-2072-GHW, 2015 WL 72804, at *15 (S.D.N.Y. Jan. 6, 2015) (dismissing deliberate indifference claim against doctor because plaintiff failed to allege facts showing that condition "was objectively sufficiently serious at the time he saw" the doctor). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). However, the Second Circuit has set forth considerations that should guide the analysis. These considerations include (1) whether a reasonable doctor or patient would perceive the medical need in question as "important or worthy of comment or treatment," (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702-703 (2d Cir. 1998). In evaluating the seriousness of the condition, the Court considers the plaintiff's medical condition at the time he interacted with the defendants. *See El-Hanafi v. United States*, No. 1:13-cv-2072-GHW, 2015 WL 72804, at *15 (S.D.N.Y. Jan. 6, 2015) (dismissing deliberate indifference claim against doctor because plaintiff failed to allege facts showing that condition "was objectively sufficiently serious at the time he saw" the doctor).

While Green has presented medical evidence showing that he underwent surgery in 2017 to address an anal fissure, he presents no evidence showing that this condition was present in the summer of 2015. To the contrary, Green specifically states that his condition worsened after his transfer to MacDougall-Walker Correctional Institution in March 2016. These allegations show that Green's condition developed into a serious medical need, but do not suffice to show—even taking all inferences in the light most favorable to Green—that the need existed at the time he met with Defendants *at Corrigan*. *See Melvin v. County of Westchester,* Case No. 14-CV-2295(KMK),

2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) ("[T]he benefit of hindsight cannot support a claim of deliberate indifference to a serious medical need that was unknown at the time of treatment."); *Figueroa v. Semple*, No. 3:12-cv-982(VAB), 2015 WL 3444319, at *5 (D. Conn. May 28, 2015) ("Although the injuries suffered by the plaintiff provide the [c]ourt with the benefit of hindsight, they do not show that, ***at the time of the incident in question***, the defendants disregarded an excessive risk to the plaintiff's safety." (emphasis added)).

At the time he met with Defendants, Plaintiff's medical records establish that he complained of rectal pain and bleeding during bowel movements, which were diagnosed as symptomatic of hemorrhoids. Without minimizing the discomfort that Green experienced, I, join with the majority of courts in this Circuit in declining to find that hemorrhoids, rectal bleeding, or painful bowel movements constitute a "serious medical need" for Eighth Amendment purposes. *Adams v. Rock*, No. 9:12-CV-1400 GLS/ATB, 2015 WL 1312738, at *8 (N.D.N.Y. Mar. 24, 2015) (constipation and minor bleeding that later evolved into an anal fissure did "not constitute 'serious' medical conditions necessary to establish the objective component of an Eighth Amendment medical care claim."); *Black v. Fischer*, No. 9:08-CV-0232, 2010 WL 2985081, at *10 (N.D.N.Y. July 1, 2010) (constipation and an external hemorrhoid for a period of less than one month, during which plaintiff experienced typical symptoms, including discomfort and minor bleeding are not sufficiently serious to establish an Eighth Amendment claim); *Kendall v. Kittles*, No. C0 Civ. 628 (GEL), 2004 WL 1752818, at *6 (S.D.N.Y. Aug. 4, 2004) ("Hemorrhoids, albeit, uncomfortable, are a minor issue, far removed from the category of medical conditions that have been deemed 'sufficiently serious' by other courts."); *Lowman v. Perlman*, No. 9:06–CV–0422, 2008 WL 4104554, at *5 (N.D.N.Y. Aug. 29, 2008) (plaintiff's hemorrhoid condition was not sufficiently

serious to give rise to an Eighth amendment claim); *Cabassa v. Gummerson*, No. 01–CV–1039, 2006 WL 1559215, at *9-10 (N.D.N.Y. Mar. 30, 2006), *report and recommendation adopted*, 2006 WL 1555656 (N.D.N.Y. Jun. 1, 2006) (same); *Youngblood v. Glasser*, No. 9:10-CV-1430 NAM/DEP, 2012 WL 4051846, at *8 (N.D.N.Y. Aug. 22, 2012), *report and recommendation adopted*, No. 9:10-CV-1430, 2012 WL 4051890 (N.D.N.Y. Sept. 13, 2012) (collecting cases); *but see Muhammad v. New York Dep't of Corrs.*, No. 10 Civ. 1707, 2011 WL 797506 (S.D.N.Y. Feb. 3, 2011) (where plaintiff alleged that his hemorrhoids caused him to experience "unbearable and excruciating pain, left him chronically weakened, and has interfered with daily activities by making it practically impossible for him to use the bathroom", plaintiff "sufficiently pled that his medical condition constituted a serious medical need" although "at some later stage in the litigation" it may become clear that the claims are not adequately supported), *report and recommendation adopted*, 2011 WL 797672 (S.D.N.Y. Mar. 3, 2011).   While Plaintiff reported experiencing some pain, the record does not indicate that it was "chronic and substantial" or significantly affected Plaintiffs' daily activities —quite the opposite, Plaintiff did not complain of his symptoms again until more than a year after his appointment with Defendant Brennan. *Youngblood* 2012 WL 4051846, at *8 (dismissing Eighth Amendment claim against prison physician on summary judgment where plaintiff did not claim to be in substantial pain from hemorrhoids and had not complained about the condition again after meeting with the physician); *cf. Ferguson v. Cai*, No. 11-cv-6181, 2012 WL 2865474, at *3 (S.D.N.Y. July 12, 2012) ("A serious medical need is generally characterized by 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" (quoting *Johnson*, 412 F.3d at 403).

The Court concludes that Green has not established that he had a serious medical need

when he was seen by Defendants Shaw and Brennan.  To state the proposition in the Rule 56 context, this record does not present a genuine issue on that particular material fact.

2.  Deliberate Indifference

Even if he could show that he had a serious medical need in July and August 2015, Green presents no evidence that either Defendant possessed a sufficiently culpable state of mind to establish deliberate indifference.

A prison medical provider acts with deliberate indifference when she "knows of and disregards an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702.  The medical provider must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  By contrast, mere negligence, even that which is tantamount to medical malpractice, does not amount to an Eighth Amendment violation. *Estelle*, 429 U.S. at 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Hathaway,* 37 F.3d at 66 (2d Cir. 1994) ("[d]eliberate indifference requires more than mere negligence, but less than conduct undertaken for the very purpose of causing harm"); *Chance,* 143 F.3d at 703 (holding that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim").

It is now well-settled that, without more, neither misdiagnosis by prison medical staff nor disagreement over the proper course of treatment rises to the level of a constitutional violation. *Estelle*, 429 U.S. at 106; *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the

need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."). Rather, to state an Eighth Amendment claim an inmate "must demonstrate that the defendants act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm w[ould] result." *Farid v. Ellen*, 593 F.3d 233, 248 (2d Cir. 2010) (alterations in original) (internal quotation marks omitted). Additionally, "[w]hile disagreements regarding choice of treatment are generally not actionable under the Eighth Amendment, judgments that have no sound medical basis, contravene professional norms, and appear designed simply to justify an easier course of treatment (in this case, no treatment) may provide the basis of a claim." *Stevens v. Goord*, 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008).

Applying these principles here, Plaintiff's central claim— that Defendants failed to properly diagnose the nature of his condition or its severity—does not give rise to a constitutional violation. As discussed, the mere fact that Defendants misdiagnosed Plaintiff or failed to recognize the severity of his medical condition—even if their mistake was obvious or highly consequential— cannot, standing alone, support an Eighth Amendment claim. *See, e.g.*, *Thomas v. Wright*, No. Civ. 9:99–CV–2071 (FJS/GLS), 2002 WL 31309190, at *8 (N.D.N.Y. Oct. 11, 2002) (granting summary judgment for prison medical provider-defendants who failed to diagnose an inmate's colon cancer for nearly one year, during which time they treated his symptoms with only stool softener, milk of magnesia, antibiotics, and Metamucil); *Sheils v. Flynn*, No. 9:06–CV–407, 2009 WL 2868215, at *18 (S.D.N.Y. Sept. 2, 2009) ("While Defendants' failure to immediately diagnose the lesion on Plaintiff's shoulder as cancer was undoubtedly frustrating and frightening

for Plaintiff, the record simply does not indicate any behavior on Defendants' part that elevates the situation from possible medical malpractice to the level of a constitutional violation."); *Felipe v. New York State Dep't of Correctional Servs.*, No. 95-CV-1735, 1998 WL 178803, at *3 (N.D.N.Y. Apr. 10, 1998) (Pooler, D.J.) (granting defendants judgment on pleadings where plaintiff who complained of stomach pains was eventually diagnosed with gallbladder disease which required surgery; "[a]lthough [plaintiff] may have disagreed with their form of treatment, such as their administration of Mylanta and Zantac and their directive to drink lots of fluids, there is no allegation that any of these staff members were actually aware that such treatment was inadequate. Plaintiff's allegations amount to nothing more than possible medical malpractice or negligence").

Plaintiff has presented no evidence that his diagnosis and treatment were so devoid of sound medical basis or far afield of accepted professional standards as to raise an inference of deliberate indifference. *Stevens*, 535 F. Supp. at 388. Nor does Plaintiff claim that Defendants made medical decisions "designed simply to justify an easier course of treatment," despite being less efficacious. *Id. See also Chance*, 143 F.3d at 703 ("In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan."). Further, to the extent Green alleges that he was suffering from additional ailments that Defendants failed to diagnose, he has provided no evidence that these medical issues—which were diagnosed nearly two years after Plaintiff's last meeting with either Defendant, and after his condition had worsened—were present during his consultation with either Defendant, much less that Defendants acted with flagrant disregard to his health. *Chance*, 143 F.3d at 703.

To the contrary, the record shows that both Nurses took reasonable, affirmative steps to diagnose and treat Plaintiff's condition. Both, for example, had reasonable basis to believe that

Green had a standard case of hemorrhoids. In Defendant Shaw's case, Green's symptoms and physical condition were consistent with hemorrhoids, particularly in light of his Ramadan fast. And Defendant Brennan was consulted specifically to address Plaintiff's concerns about his hemorrhoids.[6] Based on Plaintiff's condition and recent onset of symptoms, it was also reasonable that both nurses advocated a preliminary treatment plan centered on self-help measures to prevent flare-ups and use of hemorrhoid cream. *See, e.g., Walker v. Kubicz*, 996 F. Supp. 336, 341 (S.D.N.Y. 1998) (dismissing Eighth Amendment claim for failure to treat and diagnose prisoner's pneumonia because prison doctors prescribed prisoner a preliminary course of treatment and, once becoming aware of the seriousness of prisoner's symptoms, promptly sought emergency care); *Johnson v. Wright*, 477 F. Supp. 2d 572, 576 (W.D.N.Y. 2007) ("That plaintiff may have preferred a more aggressive course of treatment . . . does not show that defendants acted wantonly with the purpose of causing him pain."). Indeed, numerous courts in this Circuit have found that treatment similar to that which Plaintiff concedes was administered here is sufficient to pass muster under the Eighth Amendment. *See, e.g.*, *Black*, 2010 WL 2985081, at *10 (nurse who provided plaintiff experiencing hemorrhoids with ointment, a stool softener, and instructions to drink water and exercise "acted reasonably in treating plaintiff's hemorrhoid"); *Youngblood*, 2012 WL 4051846, at *8–*9 (no deliberate indifference where inmate complaining of hemorrhoids was given "stool softeners and ointment" by a nurse); *Domenech v. Taylor*, No. 9:09–CV–162 (FJS/DEP), 2010 WL 6428459, at *8 (N.D.N.Y. Sept. 8, 2010) (same where inmate was given "hemorrhoidal cream,

---

[6] Indeed, this diagnosis was confirmed by multiple medical providers from different institutions over the next two years, further contradicting Plaintiff's allegations that Defendants were deliberately indifferent. *See Snyder v. Monroe*, No. 15 CV 4033 (VB), 2018 WL 722421, at *6 (S.D.N.Y. Feb. 5, 2018), *appeal dismissed sub nom. Snyder v. Provider Miss Monroe*, No. 18-673, 2018 WL 7571445 (2d Cir. Sept. 12, 2018).

cleansing pads, suppository pads, and a stool softener"), *report and recommendation adopted*, 2011 WL 1214431 (N.D.N.Y. Mar. 31, 2011); *Castillo v. Rodas*, No. 09 CIV. 9919 AJN, 2014 WL 1257274, at *7 (S.D.N.Y. Mar. 25, 2014) (same where inmate was given hemorrhoid cream). Nurse Shaw also specifically instructed Plaintiff to return within three to four days if his condition did not improve—which he did not. We also note that the evidence of record shows that each Defendant only interacted with Green once—itself strong evidence that the Defendants were not deliberately indifferent. *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 569–70 (S.D.N.Y. 2008) (Chin, D.) (dismissing complaint against two prison medical providers who had each only seen the plaintiff once shortly after the onset of his medical issues because "[t]he claim of deliberate indifference is not plausible . . . given their limited roles early in Lloyd's treatment").[7]

Plaintiff's allegations stemming from Defendants' diagnosis-related decisions—specifically, that Defendants should have conducted a rectal examination and referred him to a doctor[8]—do not alter this analysis. Diagnostic techniques and treatment selection are "classic

---

[7] The parties disagree as to several factual details concerning Plaintiff's interactions with the Defendants, including whether Plaintiff's vital signs were within normal range [*see* Doc. 24-3 ¶ 21; Doc. 29 at 18 ¶¶ 9, 63] and whether Plaintiff told Defendant Brennan that he was bleeding from his rectum [*see* Doc. 24-5, Pl.'s Ex. C ¶¶ 16, 18]. None of the disputed facts is material. At most, they may provide evidence of negligence, which cannot constitute the basis of an Eighth Amendment claim. *Chance*, 143 F.3d at 702; *see also Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) ("The most that [the plaintiff's] allegations show, however, is that the [defendants] misdiagnosed his injuries, and failed to recognize the severity of those injuries. Such allegations might conceivably show malpractice, but they do not state an Eighth Amendment claim.") (citations omitted); *Irby v. Frisnia*, 119 F. Supp. 2d 130, 132 (N.D.N.Y. 2000) (granting summary judgment for insufficient evidence as to deliberate indifference where defendants were "[a]t most ... guilty of negligence" in failing to diagnose plaintiff's injury, but where "this misdiagnosis was based on a reasonable, although incorrect, assessment of Plaintiff's condition"); *Halstat v. Bellon*, No. 3:13-cv-779 (JCH), 2014 WL 47494078, at *4 (D. Conn. Sept. 23, 2014).

[8] The parties dispute whether Plaintiff requested a consultation with a doctor. *See* Doc.

example[s] of matters for medical judgment"; accordingly, prison medical staff are vested with broad discretion to determine what method of diagnosis and treatment to provide their patients. *Estelle*, 429 U.S. at 107, 97 S.Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998).

In *Sanchez v. RN Debbie*, for example, this court dismissed claims against two prison nurses who failed to diagnose plaintiff's pneumonia after refusing plaintiff's request to examine his chest and lungs or perform an EKG. No. 3:18-CV-1505 (JCH), 2018 WL 5314916, at *7-*9 (D. Conn. Oct. 26, 2018). One nurse also stated that she would refer plaintiff to a doctor the next day, but failed to do so. *Id.* at *7-*8. The court held that the nurses had not been deliberately indifferent in declining to conduct the diagnostic procedures requested by plaintiff: "[t]he fact that her examination may not have been as thorough as Sanchez may have liked, constitutes, at most, negligence." *Id.* at *8. Similarly, in *Freeman*, plaintiff, who ultimately had to undergo an appendectomy due to his medical condition, alleged that a prison nurse who "just [gave plaintiff] a bottle of Kaeopectate" to address his symptoms was deliberately indifferent in refusing to refer him to a doctor or conduct a physical examination. 2000 WL 1459782, at *36. The court granted summary judgment for the nurse, finding that "[e]ven if Nurse Frater should have examined Freeman more closely on November 6, referred him to a doctor or suggested a follow-up visit if his condition did not improve, Nurse Frater's treatment would constitute at most negligence, which does not give rise to an Eighth Amendment claim." *Id.* at *9.

---

24-3 ¶ 53; Doc. 29 at 26 ¶ 61. For purposes of this motion, we will assume that Plaintiff did request a referral.

Here, Plaintiff's allegations amount to no more than disagreements as to the proper party and technique to diagnose Plaintiff's medical condition. But a prisoner has no right to dictate the course of his medical treatment. *See Johnson v. Newport Lorillard*, No. 01 CIV. 9587 (SAS), 2003 WL 169797, at *3 (S.D.N.Y. Jan. 23, 2003); *see also Jackson v. Kaufman*, No. 13 CIV. 6544 PAC DF, 2015 WL 5521432, at *11 (S.D.N.Y. Sept. 18, 2015) ("Plaintiff's apparent argument that he was entitled to examination and treatment by a physician, rather than by nurses is unsupported by any legal authority."); *White v. Williams*, No. 9:12-CV-1892, 2016 WL 1237712, at *12 (N.D.N.Y. Jan. 11, 2016), *report and recommendation adopted*, No. 912CV1892GLSATB, 2016 WL 1239263 (N.D.N.Y. Mar. 29, 2016) (plaintiff's belief that prison nurse should have referred him to a doctor to treat injuries sustained in an attack "amounts to a dispute over the appropriate treatment, and does not state an Eighth Amendment claim"); *Sereika v. Patel*, 411 F. Supp. 2d 397, 407 (S.D.N.Y. 2006) (allegations that plaintiff was examined by physicians assistants rather than a doctor did not state a claim for deliberate indifference); *Palacio v. Ocasio*, No. 02-CV-6726 (PAC)(JCF), 2006 WL 2372250, at *11 (S.D.N.Y. Aug. 11, 2006), *aff'd sub nom. Palacio v. Pagan*, 345 F. App'x 668 (2d Cir. 2009) ("Defendant Edano's decision not to x-ray Palacio's jaw and his failure to diagnose the fracture do not support a claim under 42 U.S .C. § 1983. Viewed in a light most favorable to the Plaintiff, the record does not suggest that Edano evinced a culpable recklessness in the manner in which he diagnosed Palacio's injury."). Even assuming that Defendants should have conducted a rectal exam or referred Plaintiff to a doctor, absent evidence that Defendants acted with a culpable state of mind—which does not exist here—Defendants' "treatment would constitute at most negligence, which does not give rise to an Eighth Amendment claim." *Freeman* 2000 WL 1459782, at *8.

Based on the foregoing, no reasonable trier of fact could find that the Defendants acted with deliberate indifference to Plaintiff's serious medical needs in violation of his constitutional rights. Accordingly, Defendants are entitled to summary judgment as a matter of law dismissing Plaintiff's complaint.

C.    Qualified Immunity

Finally, the Defendants argue that they are protected by qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

In determining whether an official is entitled to qualified immunity, courts consider whether (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). A court may consider these two questions in either order and, if it determines that one prong is not satisfied, it need not reach the other. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

With respect to the first prong, the Court has determined that Green fails to establish that the Defendants violated his constitutional or statutory rights. On that basis alone, Defendants are entitled to summary judgment on the issue of qualified immunity. *See, e.g.*, *Moore v. Kwan*, No. 12-CV-4120 (VSB), 2016 WL 9022575, at *17 (S.D.N.Y. Mar. 30, 2016) (finding that prison medical staff members were entitled to qualified immunity because Plaintiff had failed to show an underlying constitutional violation), *aff'd*, 683 F. App'x 24 (2d Cir. 2017) (citing *Kelsey v. Cnty. of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009)).

Even if the Court had found an issue of fact as to the constitutional claim, however, the Defendants would be entitled to qualified immunity under the second prong of the test. Under the second prong, a right is clearly established if, "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 665 (2012). Rather, "the clearly established right must be defined with specificity," *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019), and "'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (citing *Anderson*, 483 U.S. at 640). Put differently, the specific legal principle at issue must clearly prohibit the officer's conduct in the particular circumstances before him. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

Here, the Defendants do not argue that Green's right to adequate medical care was not clearly established. Rather, they contend that under the circumstances of this case, they would not have understood that their actions violated that right. Green concedes that Defendant Shaw diagnosed hemorrhoids, offered some treatment suggestions to relieve his symptoms, and instructed him to return if the symptoms continued. Green did not return and Defendant Shaw

never saw him again.  Under these facts, Defendant Shaw's initial conservative treatment was objectively reasonable, and falls far short of something that a reasonable medical provider would believe to be unlawful.  Thus, Defendant Shaw would be protected by qualified immunity.

Defendant Brennan also saw Green only once.  She answered questions regarding hemorrhoids, and advised him on how to reduce the severity.  Even assuming Green told her that he was bleeding from his rectum and asked to see a doctor, Defendant Brennan would not have understood that her alleged failure to schedule a doctor exam violated Green's constitutional right to adequate medical treatment.  Green appeared satisfied with her responses to his questions.  He did not return to see Defendant Brennan or inform her that the information she provided was ineffective regarding his condition.  The Court thus concludes that Defendant Brennan would also be protected by qualified immunity.

**IV.**     **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment [Doc. 24] is **GRANTED**.   The Clerk is directed to enter judgment in favor of the Defendants and close this case.

**It is SO ORDERED.**

Dated:  New Haven, Connecticut
           March 29, 2019

                                                    */s/ Charles S. Haight, Jr.*
                                                    Charles S. Haight, Jr.
                                                    Senior United States District Judge